■ In the Matter of the Claim of ANTHANASIS ANDRIAS, Respondent, v. RYAN-TURECAMO, INC., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal from a decision and award of the Workmen's Compensation Board for reduced earnings, appellants employer and carrier denying that claimant's initial disability from the occupational disease of lead poisoning caused by his work as a painter continued to the period of the present award. Claimant's attending physician filed reports, answering "yes" to a question as to resulting "Permanent defect", which he then described as "Inability to do painting any more or to work in any lead contact". The doctor testified to the same effect. His consultant rendered a report to the carrier, from which appellants quote, and in which he said that claimant's condition is "arrested" and that he cannot be employed where lead exposure is present. He stated that the prognosis is "guarded" and that "an infection or scidosis may activate the lead poisoning." Appellants mistakenly rely upon the doctor's additional statement in the report that claimant's "present complaints are not due to lead poisoning". These complaints related to an acute and apparently temporary episode attributed by the attending physician to an intestinal or stomach upset due to food; and the doctor's statement is thus irrelevant to the issue respecting the concededly quiescent condition, which would not be expected to evoke "complaints". The carrier's expert said that claimant "is not any more or less apt to get lead poisoning than he was the first time" and that "the hazard is the same whether he had been cured or not", the difficulty being that his renal system does not excrete lead "as well as in the average individual". Upon interrogation by the Referee, this expert conceded that some amount of lead remained in claimant's bones but when asked as to the possibility of an acute exacerbation said, "I doubt if this man has enough lead with the modern deleting agents * * * this agent * * * tends to — it goes into the bone and takes out the lead." In testing the issue of continued causal relation in cases such as this, the courts have consistently construed quite literally the sections of the Workmen's Compensation Law which constitute the sole source of claimants' rights. In article 3, relating to occupational diseases, subdivision 1

of section 37 defines "disability" as "the state of being disabled from earning full wages *at the work at which the employee was last employed*" (italics supplied) and section 39 provides compensation "for the duration" of such a "disablement", "provided, however, that if it shall be determined that an employee so disabled is able to earn wages at another occupation which shall be neither unhealthful nor injurious, and such wages do not equal his full wages prior to the date of his disablement, the compensation payable shall be computed pursuant to the provisions of article two of this chapter". We said in a case closely parallel to this: "These statutory directives, coupled with the familiar principle that an employer takes an employee as he finds him, whatever the latter's physical idiosyncrasies may be, or the allergies to which he may be subject, furnishes justification upon the conceded facts for the finding that claimant contracted an occupational disease, and became entitled to compensation for the disability resulting therefrom." (*Matter of Adamsbaum* v. *Broadway Health Club*, 271 App. Div. 576, 578, motion for leave to appeal denied 297 N. Y. 1031; see *Matter of Cutting* v. *Hewitt Rubber Co.*, 274 App. Div. 1080, affd. 300 N. Y. 598; *Matter of Burley* v. *American Locomotive Co.*, 2 A D 2d 621.) The medical evidence, even in aspect most favorable to appellants, brings claimant within the language of the statute. Decision and award unanimously affirmed, with costs to the Workmen's Compensation Board.